UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

JEFFREY K. WALKER,

                Petitioner,

    v.                                                                                           Case No. 23-cv-1743-bhl

BRIAN CAHAK, Warden,[1]

                Respondent.
_____

## ORDER DENYING § 2254 HABEAS PETITION
_____

        In 2017, a Brown County jury found Petitioner Jeffrey K. Walker guilty on nine felony counts arising from the sexual assaults of two young boys. Following his convictions, the state court sentenced Walker to twenty years of initial confinement. Walker then challenged his conviction and sentence in postconviction proceedings and on direct appeal, arguing, among other things, that he received ineffective assistance of counsel and the evidence against him was insufficient to support his conviction. After the state courts affirmed Walker's conviction, he filed a petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254. (*See* ECF No. 1.) Walker has also filed a motion for release on bond pending appeal. (*See* ECF No. 24.) Because Walker has not established that he is entitled to habeas relief, both his petition and motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

        In August 2015, Walker was charged with two counts of sexual assault of a child and one count of child enticement. (ECF No. 8-5 at 2.) The original criminal complaint describes reports by two young boys, Victim 1 and Victim 2, who separately told police that they had slept at Walker's home on different occasions and were awakened to find Walker sexually assaulting them.

_____

[1] Walker is incarcerated at Oshkosh Correctional Institution, where Brian Cahak is now Warden. Accordingly, Cahak is the appropriate Respondent for Walker's habeas petition. *See* Rule 2(a) of the Rules Governing § 2254 Cases.

[2] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals decision affirming Walker's conviction. (*See* ECF No. 8-5 at 1–28); *see also State v. Walker*, No. 2020AP2115-CR, 2023 WL 3589959 (Wis. Ct. App. May 23, 2023).

(*Id.*)  The State ultimately filed a nine-count amended information charging Walker with eight counts of sexual assault and one count of child enticement.  (*Id.* at 2–3.)  The first five counts involved illegal sexual conduct with Victim 1 during the spring of 2011.  (*Id.* at 3.)  The next three counts involved illegal sexual conduct with Victim 2 during the summer of 2013.  (*Id.*)  The child enticement count related to an incident involving Walker and Victim 2 on August 1, 2015.  (*Id.*)

At trial, Victim 1 testified that Walker and his father had been friends, and that Walker assaulted him when he was in middle school.  (*Id.*)  Victim 1 related how, during the spring of 2011, when he was either eleven or twelve years old, Walker had invited him to go bowling and then spend the night with Walker.  (*Id.*)  Victim 1 accepted the invitation and the two went bowling and later watched movies at Walker's mother's apartment, where Victim 1 drank two "tall cans" of beer that Walker offered him.  (*Id.*)  Later that evening, Victim 1 woke up to Walker sexually assaulting him.  (*Id.*)  During his direct examination, Victim 1 provided specific and graphic details regarding multiple incidents of illegal sexual conduct inflicted upon him by Walker.  (*Id.*; ECF No. 8-7 at 149–160.)  Victim 1 testified that he did not immediately report the assaults because he feared he would not be believed.  (ECF No. 8-5 at 3.)  Victim 1, however, finally reported the assaults to his mother in 2014 after she confronted him about changes in his behavior.  (*Id.*)  Victim 1 testified that he did know or recognize Victim 2, the other victim.  (*Id.*)

Victim 2 testified after Victim 1.  (*Id.* at 4.)  He testified that Walker was a family friend and during the summer of 2013, when Victim 2 was in middle school, Victim 2 slept at Walker's mother's home where he watched television and drank a Mike's Hard Lemonade that Walker had offered to him.  (*Id.*)  After Victim 2 fell asleep, "he woke up to Walker unbuttoning and unzipping" his pants.  (*Id.*)  Victim 2 then testified that Walker performed sex acts on him.  (*Id.*; ECF No. 8-7 at 199–204.)  Victim 2 also described another separate incident that occurred several months later where Walker took Victim 2 and a friend on a fishing trip.  (ECF No. 8-5 at 4.)  The three stayed together in a motel in Kewaunee, Wisconsin, where Walker gave Victim 2 a beer and told him to "chug it."  (*Id.*)  That evening, Victim 2 awoke to Walker picking him up and carrying him over Walker's bed.  (*Id.*)  Victim 2 testified that Walker then sexually assaulted him.  (*Id.*)

Victim 2 next described an incident in 2015 where Walker arrived at Victim 2's home, took him out for dinner, and later stopped at a gas station to purchase alcohol.  (*Id.*)  Victim 2 testified that he was concerned "[b]ecause all the other times [Walker] bought alcohol he raped [Victim 2]."  (*Id.* at 4–5.)  Walker attempted to check into two motels with Victim 2 but while at

the second motel, Victim 2 fled from Walker's vehicle and ran to a friend's house because he "didn't want the same thing to repeat over again." (*Id.* at 5.) When Victim 2 returned home, he reported the sexual assaults to his mother. (*Id.*) Victim 2 testified that he did not know Victim 1. (*Id.*)

The prosecutor also introduced testimony from Victim 1's mother, Victim 2's mother and sister, and a detective, after which Walker testified in his own defense. (*Id.* at 5–6.) Walker flatly denied ever having sexual contact or sexual intercourse with Victim 1 or Victim 2. (*Id.* at 6.) He insisted he had tried "to be a positive role model" for the boys. (*Id.*) On cross-examination, the prosecutor asked Walker a series of questions about whether he was being a "role model" when he performed sex acts on each child. (ECF No. 8-8 at 140–58.)

The case went to the jury and, after about forty-five minutes of deliberation, the jury found Walker guilty on all nine felony counts. (ECF No 12 at 36; ECF No. 8-1.) The trial judge sentenced Walker to 20 years of initial confinement and 15 years of extended supervision. (ECF No. 8-1 at 2–3.)

Walker, proceeding *pro se*, filed a motion for postconviction relief arguing, among other things, that the evidence was insufficient to convict him, that he had received ineffective assistance from his counsel, and that the jury had engaged in misconduct. (ECF No. 8-2.) The state circuit court held an extensive evidentiary hearing (called *Machner* hearings under Wisconsin law) concerning Walker's ineffective assistance allegations. After hearing testimony from both Walker and his trial counsel, the court rejected Walker's claims and denied the motion. (ECF No. 8-3.) Walker then filed a direct appeal and raised multiple issues including the issues raised in his postconviction proceedings. (ECF No. 8-4 at 1–41.) The Wisconsin Court of Appeals denied his claims and affirmed his conviction on May 23, 2023. (ECF No. 8-5.) Walker filed a motion for reconsideration, which the court of appeals denied. (ECF No. 1-1 at 1–2.) Walker then petitioned for review in the Wisconsin Supreme Court, but that court denied his petition on September 26, 2023. (*Id.* at 3–4.) Walker did not file a petition for writ of certiorari with the United States Supreme Court. (ECF No. 1 at 4.) On December 29, 2023, Walker timely filed a petition for writ of habeas corpus with this Court. (ECF No. 1.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must

show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. § 2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of § 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of § 2254(d)(2) when the "state court identifies the correct governing legal principle . . . but unreasonably applies it to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

On habeas, Walker raises five grounds for relief. (ECF No. 1 at 6–9.) In ground one, Walker contends the evidence was insufficient to support a guilty verdict on the child enticement charge. (*Id.* at 6–7.) In grounds two, three, and four, Walker contends his trial counsel was constitutionally ineffective when she failed to object to the prosecutor's "golden rule" argument

in closing and to the government's "role model" line of questioning during cross examination. (*Id.* at 7–8.) He also complains that counsel should have impeached the victims by pointing out their inconsistent statements. (*Id.* at 9.) In ground five, Walker argues juror misconduct. (*Id.*) Under AEDPA, Walker is required to show that no fair-minded jurist would conclude that the Wisconsin Court of Appeals' decision rejecting his claims was inconsistent with the applicable United States Supreme Court precedent. *See Harrington*, 562 U.S. at 102. Because Walker has failed to make this showing on any of his grounds, his petition will be denied.

I. **The Wisconsin Court of Appeals Reasonably Applied Federal Law in Concluding That the Evidence Was Sufficient to Sustain Walker's Child Enticement Conviction.**

Walker argues that the evidence was insufficient to support the child enticement conviction because the prosecutor failed to show that Walker enticed Victim 2 and intended to have sexual contact with him. (ECF No. 12 at 7–12.) The Wisconsin Court of Appeals addressed the merits of this claim by stating the relevant standard for sufficiency of the evidence: "We must consider the evidence in the light most favorable to the State and the jury's verdict." (ECF No. 8-5 at 22–23 (citing *State v. Smith*, 817 N.W.2d 410 (Wis. 2012).) This standard is identical to the controlling United States Supreme Court precedent, *Jackson v. Virginia*, in which the Court held that federal habeas courts must view all of the evidence in the light most favorable to the government and determine whether "any rational trier of fact could have [reached a guilty verdict] beyond a reasonable doubt." 443 U.S. 307, 318–19 (1979) (emphasis removed).

The court of appeals noted that the 2013 incident involved Walker taking Victim 2 to a motel in Kewaunee, Wisconsin, providing him with alcohol, and later sexually assaulting him during the night. (ECF No. 8-5 at 22.) It also cited Victim 2's testimony that on August 1, 2015, when Victim 2 was fourteen years old, Walker gave him alcohol and attempted to check into two different motels with Victim 2. (*Id.*) While at the second motel, Victim 2 ran away because he did not want Walker to again sexually assault him. (*Id.*) As the court of appeals stated, "Given the similarities between Walker's conduct on August 1 and the prior sexual assault in Kewaunee, the jury could reasonably infer that Walker was attempting to take [Victim 2] into the motel room with the intent of having sexual contact with [him]." (*Id.* at 22.) Viewing the evidence in the light most favorable to the verdict, the appellate court concluded that "the circumstantial evidence . . . was sufficient to support reasonable inferences of [Walker's] intent" and noted that "[a] conviction may be supported solely by circumstantial evidence." (*Id.* at 23 (citation omitted).)

Walker argues that the prosecutor "never show[ed]" that Walker took Victim 2 to the motel "with the intent to have sexual contact with him." (ECF No. 12 at 8.) Walker misunderstands the proof necessary for a conviction. Criminal intent may be found and inferred based on a person's acts. *See* Wisconsin Jury Instruction – Criminal 2134A (2018) ("You cannot look into a person's mind to find intent. Intent must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon intent."). The court of appeals reasonably concluded that the evidence was sufficient to support Walker's child enticement conviction and Walker's arguments to the contrary fail to show otherwise. Accordingly, ground one of his petition is without merit.

## II. The Wisconsin Court of Appeals Did Not Unreasonably Apply Controlling Supreme Court Precedent in Concluding that Trial Counsel Was Not Constitutionally Ineffective.

The controlling Supreme Court precedent for an ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation of *Strickland*, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, the *Strickland* test requires the petitioner to establish both (1) deficient performance by counsel and (2) prejudice. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 689–90; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). This burden requires Walker to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, Walker must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A court need not address both components; if the defendant makes an insufficient showing on one, the inquiry ends. *Strickland*, 466 U.S. at 697.

In grounds two through four, Walker alleges trial counsel was ineffective in three separate ways. In ground two, he alleges that trial counsel was deficient in failing to object during the closing arguments to an improper "golden rule" argument. (ECF No. 1 at 7.) In ground three,

Walker maintains that trial counsel was deficient in failing to object to the State's "role model" line of questioning. (*Id.* at 8.) Finally, in ground four, he alleges that trial counsel was deficient in failing to effectively impeach the alleged victims. (*Id.* at 9.)

In this case, the Wisconsin Court of Appeals applied Wisconsin law incorporating the *Strickland* two-part test for evaluating claims of ineffective assistance of counsel. (ECF No. 8-5 at 7.) The appellate court correctly identified both parts of the test, noting that it required Walker to "prove: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense." (*Id.* (citing *State v. Sholar*, 912 N.W. 89, 101 (Wis. 2018).) The appellate court also correctly explained that *Strickland*'s prejudice prong required him to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* (quoting *State v. Savage* 951 N.W.2d 838, 849 (Wis. 2020).) It also explained that a reasonable probability is "a probability sufficient to undermine the confidence in the outcome." (*Id.* (citing *Strickland*, 466 U.S. at 694).) The appellate court then discussed Walker's arguments and the relevant evidence and concluded that even if trial counsel's errors constituted deficient performance, Walker had "failed to show prejudice as a result of his trial counsel's failure." (*Id.* at 10–17.)

Because the state court applied the appropriate rule from *Strickland*, this Court applies an even higher standard of habeas deference. As the United States Supreme Court emphasized:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in the United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (emphases in original) (citation omitted). The Supreme Court acknowledged that "[s]urmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 (citations omitted) ("The standards created by *Strickland* and § 2254(d) are

both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."); *see also Woods*, 575 U.S. at 316–17 ("[F]or claims of ineffective assistance of counsel, [] AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt."(cleaned up)).

In ground two, Walker argues that trial counsel performed deficiently by failing to object to the prosecutor's closing argument in which he asked the jurors "at least three times" to "place themselves in the shoe[]s of the alleged victims." (ECF No. 1 at 7; ECF No. 12 at 12–21.) As the court of appeals noted, in a criminal case, asking the jurors to consider themselves in the victim's shoes is a prohibited "golden rule" argument because it appeals to the jurors' sympathy for the victim of the crime. (ECF No. 8-5 at 16 (citing *State v. DeLain*, 679 N.W.2d 562, 569 (Wis. Ct. App. 2004).) The court of appeals concluded that trial counsel's performance in failing to object to such statements during closing arguments was deficient. (*Id.*) The court of appeals also concluded, however, that Walker had failed to show prejudice, noting that "two different victims who did not know each other testified to almost identical stories about being singled out in middle school and subjected to specific grooming behavior by Walker and then plied with alcohol and brutally assaulted." (*Id.* at 17 (cleaned up).) Therefore, the appellate court held that there was not a reasonable probability that, but for counsel's failure to object to the prosecutor's improper golden rule argument, the result of the proceedings would have been different. (*Id.*)

The issue on habeas review is whether the court of appeals unreasonably applied federal law when it concluded that any error was not prejudicial. To establish prejudice on habeas, the defendant must show that no "fairminded jurists could disagree" that the state court's decision conflicts with *Strickland*. *See Harrington*, 562 U.S. at 102. Walker has not met this high bar. His suggestion that, but for counsel's errors, there is a chance the jury might have reached a different verdict, is not the standard. Because the Wisconsin Court of Appeals did not unreasonably apply clearly established Supreme Court precedent in rejecting his ineffective assistance of counsel claim, this ground for habeas relief fails.

With respect to ground three, the appellate court concluded that the prosecutor's "role model" questions were not improper. After Walker testified on direct examination that his relationship with Victim 1 and Victim 2 had been one of a "role model" and "father figure," (ECF No. 8-8 at 110), the prosecutor asked Walker whether he was being a role model when he performed sex acts on his victims. (*Id.* at 141–51.) The prosecutor also asked Walker whether he

was trying to be a role model to two other young boys (not Victim 1 and Victim 2) and he answered that he was. (*Id.* at 157–58.) Walker contends such questions were argumentative, misleading, and accusatory. (ECF No. 12 at 22.) But, as Walker acknowledges, he does not "cite any legal authority showing the prosecutor's comments [were] improper." (*Id.* at 23.) Walker asserts that he does not need to come forward with authority supporting his position, but this misunderstands the habeas standard. If Walker has no legal authority that shows the unreasonableness of the state court's decision that the comments were proper, his habeas clam fails. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

Walker also argues that the prosecutor "weaponized the role model line of questions to insinuate [he] was sexually assaulting" two other boys and this was improper. (ECF No. 12 at 25.) The court of appeals noted that Walker had specifically testified to being a role model for these other boys during his direction examination and the prosecutor never implied that Walker had any sexual contact with these other boys. (ECF No. 8-5 at 16.) The court of appeals' conclusion that counsel was not deficient for failing to make a meritless objection was not unreasonable. Walker speculates that, "Since the jury could have concluded that Walker sexually assaulted [the other boys] the jury was allowed to use this false insinuation in its deliberations to convict [him]." (ECF No. 12 at 25.) As noted by Respondent, Walker's speculation falls far short of his burden to show that the court of appeals unreasonably applied federal law. (*See* ECF No. 20 at 18.)

In ground four, Walker argues that his trial counsel failed to effectively impeach Victim 1 and Victim 2. (ECF No. 12 at 26–34.) The trial transcript corroborates that Walker's attorney cross-examined Victim 1 extensively, asking why he first told police that the assault occurred in 2012 and then changed it to 2011. (ECF No. 8-7 at 167, 170–71.) She also elicited testimony from Victim 1 that the detective assigned to the case had reached out to him shortly before trial to offer to help Victim 1 deal with outstanding citations. (*Id.* at 174–80.) Walker's attorney cross-examined Victim 2 as to why his statement to police about which assault happened first differed from his trial testimony. (*Id.* at 248–51.) She also asked why he testified that he had slept on a pull-out couch at the motel, when he had told police he slept on the floor. (*Id.* at 250.) And she elicited from Victim 2 that he had never seen Walker with a gun, even though he'd testified he thought Walker had a gun. (*Id.* at 251.)

Walker argues that it was deficient performance for counsel to fail to use additional purported inconsistencies to impeach both witnesses. (ECF No. 12 at 28–34.) The court of appeals concluded that, "[a]lthough counsel could have cross-examined [Victim 2] with other alleged inconsistencies, her failure to do so did not render her performance constitutionally inadequate." (ECF 8-5 at 13.) Reviewing the transcripts of the trial and of trial counsel's testimony at the evidentiary hearing, it explained that counsel "focused on the implausibility of [Victim 1]'s allegations" and "emphasized [Victim 1]'s possible motive to lie." (*Id.* at 14.) It therefore concluded that counsel's performance in this regard was not deficient because she "could very reasonably choose to pursue these arguments instead of summarizing each possible conflict in the trial testimony." (*Id.*)

The court of appeals reasonably concluded that Walker had not established that he was prejudiced. Counsel inevitably make strategic decisions on the areas for cross examination and such strategic decisions cannot be second guessed on habeas. The state court's conclusion that counsel's cross examination decisions were reasonable has ample support in the record. This ground therefore also fails.

In sum, Walker cannot establish that the state appellate court's decisions on his ineffective assistance claims were contrary to or involved an unreasonable application of *Strickland*'s prejudice standards. Nor can Walker demonstrate that the state court's decision involved an unreasonable determination of the facts. Walker's habeas challenges to his counsel's effectiveness therefore fails.

### III. Walker's Claim of Juror Misconduct is Meritless.

Walker's final argument is that the jury engaged in misconduct and was biased against him by "deliberat[ing] for only 45 minutes" before finding him guilty on all nine charges, including child enticement. (ECF No. 12 at 34.) The United States Constitution guarantees a criminal defendant the right to an impartial jury. U.S. Const. amend. VI.; *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968) ("[T]he Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee."). Although Walker cites case law confirming that a jury must be impartial, (ECF No. 12 at 34–37), he offers no factual support that the jurors who convicted him were not impartial or any argument that the court of appeals unreasonably applied federal law. Walker's allegations that the jury "did not weigh the evidence" and was "influenced by impermissible factors" are mere

conclusory assertions. (*See* ECF No. 12 at 35–36.) As noted by the court of appeals, Walker simply "infers from the [short] duration of the jury's deliberations and from the jury finding him guilty of child enticement that the jury failed to weigh the evidence." (ECF No. 8-5 at 23.) As the court of appeals ruled, Walker's argument "has no basis in law or fact." (*Id.*) And, Walker cannot reasonably infer from the duration of the jury's deliberations that the jury failed to weigh the evidence. As the state court noted, "one could also reasonably infer that the evidence supporting Walker's convictions was overwhelming." (*Id.*) As previously explained, the evidence was sufficient to support Walker's child enticement conviction. Walker's fifth ground for relief is meritless.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Walker's petition for writ of habeas corpus, ECF No. 1, is **DENIED**, and the case is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Walker's motion for release on bond pending appeal, ECF No. 24, is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the

Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated at Milwaukee, Wisconsin on January 27, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge